UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 98-0431 (PLF)
)
FUTURE TECH INTERNATIONAL, INC., )
)
Defendant. )

---

OPINION AND ORDER

On February 23, 1999, after pleading guilty to two counts of tax evasion, defendant Future Tech International, Inc. was sentenced to probation, restitution, a $500 special assessment, and a $1,000,000 fine. Fourteen years later, during a routine audit, the Clerk of the Court observed that $1,000,200 remained in the Court Registry in connection with this case, and that this sum had accumulated over $300,000 in interest. The Clerk notified the parties, who subsequently filed papers regarding the disposition of these funds and presented their arguments at a status conference on June 12, 2014. Upon consideration of the arguments made in the parties' papers and in open court, the relevant legal authorities, and the entire record in this case, the Court will direct the Clerk of the Court to disburse the postjudgment interest and $1,000,000 of the principal to the Crime Victims Fund and the prejudgment interest to Future Tech Liquidating Corporation. The remaining $200 will be applied to the special assessment.[1]

---

[1] The papers reviewed in connection with the pending motion include the following: the government's motion to correct the Amended Judgment ("Gov't Mot.") [Dkt. No. 31]; the plea agreement ("Plea Agreement") [Dkt. No. 3], attached as Exhibit A to Gov't Mot.; Order of December 21, 1998 directing defendant to deposit $1,000,200 into the Registry of the Court ("Dec. 21, 1998 Order") [Dkt. No. 7], attached as Exhibit B to Gov't Mot.; the Judgment entered on February 25, 1999 ("Judgment") [Dkt. No. 9]; the sentencing transcript ("Feb. 23,

I. BACKGROUND

On December 17, 1998, Future Tech International, Inc. ("FTI") and the United States entered into a Plea Agreement in this case. Under the terms of the Agreement, FTI was to plead guilty to two counts of tax evasion and to pay $1,000,200 in fines and costs to the United States. Plea Agreement at 1, 5. On December 21, 1998, FTI entered its guilty plea before this Court. See Minute Entry dated December 21, 1998. That same day, the Court ordered FTI to deposit $1,000,200 into the Court Registry as security for any fines or costs imposed at sentencing, with instructions that the Clerk of the Court "hold said funds until their disposition is further ordered by the Court." See Dec. 21, 1998 Order. Accordingly, FTI deposited a check for $1,000,200 payable to the United States District Court Clerk into the Court Registry. See FTI Payment Ledger, Gov't Mot., Ex. D.

Sentencing took place on February 23, 1999. During those proceedings, the Court stated that the maximum fine that it could impose was $1,000,000, and observed that FTI "has already paid that fine of $1,000,000." Feb. 23, 1999 Tr. at 15. The Court also ordered FTI to pay a special assessment of $500. Id. Noting that $200 of this sum "ha[d] already been paid," the Court ordered FTI to pay the remaining $300 immediately. Id. This Court entered a

---

1999 Tr.") [Dkt. No. 10], attached in part as Exhibit C to Gov't Mot.; the Amended Judgment entered on April 9, 1999 ("Am. Judgment") [Dkt. No. 13], attached as Exhibit E to Gov't Mot.; defendant's motion to modify terms of probation ("FTLC Probation Mot.") [Dkt. No. 15]; defendant's response to the Court's show cause order of January 30, 2002 ("Show Cause Response") [Dkt. No. 19]; defendant's response to government's motion to correct the Amended Judgment [Dkt. No. 34]; defendant's memorandum concerning proper disposition of funds ("FTLC Mem.") [Dkt. No. 37]; the government's memorandum in support of disposition of undisbursed funds ("Gov't Mem.") [Dkt. No. 38]; the government's reply in support of its motion to correct the Amended Judgment ["Dkt. No. 39]; the government's supplemental memorandum ("Gov't Supp. Mem.") [Dkt. No. 41]; and the parties' joint notice of proposed order and amended judgment [Dkt. No. 42] ("Joint Notice").

Judgment on February 25, 1999, and an Amended Judgment on April 9, 1999. See Judgment; Am. Judgment.

Around the same time, and 900 miles away from Washington, D.C., FTI filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. See FTLC Probation Mot. at 1. Most of FTI's assets were sold to Bell Microproducts, Inc., and FTI became FT Liquidating Corporation ("FT Liquidating"), a six-employee entity tasked with winding down the company's affairs. Id. FT Liquidating informed the Court of this transition on August 13, 1999, id., and subsequently acted as FTI's successor in a small matter that arose in this case in 2002. See Show Cause Response.

The case remained quiet until June 2013, when the Clerk undertook a routine review of the funds in the Court Registry. Finding that FTI's December 21, 1998 deposit of $1,000,200 remained in the Registry – along with over $300,000 in accrued interest – the Clerk notified the parties of the unclaimed funds. On July 15, 2013, the government filed a motion to correct the Amended Judgment in order to effect the transfer of $1,000,000 from the Court Registry to the government. FT Liquidating opposed the motion. The parties further presented their arguments in cross memoranda and during a status conference held on June 12, 2014.

The government argues that the deposited funds were clearly intended to cover the $1,000,000 fine and a portion of the $500 special assessment imposed at sentencing, and that the United States therefore is entitled to $1,000,000 of the principal and any interest accrued on that amount. Gov't Mem. at 6-10; see generally Gov't Mot.; Gov't Supp. Mem. The government also questions whether there is sufficient continuity of operations or structure between FTI and FT Liquidating to warrant FT Liquidating stepping in as FTI's successor in this matter. Gov't Mem. at 10-14.

3

FT Liquidating concedes that if FTI never paid the $1,000,000 fine, then that principal amount belongs to the government. See FTLC Mem. at 5. FT Liquidating asserts, however, that the burden is on the government and it has not adequately established that FTI failed to pay the fine through some other mechanism. Id. at 5-7. FT Liquidating also argues that it is entitled to all accrued interest. Id. at 9-11.

## II. DISCUSSION

### A. *FT Liquidating is the Proper Successor to FTI*

As a threshold matter, the Court finds that FT Liquidating is the proper successor to FTI for the purpose of this litigation. FT Liquidating expressly agreed to become responsible "for resolving and paying claims" against FTI in its May 19, 1999 agreement with the Internal Revenue Service, see Motion to Approve Stipulation of Settlement at 1, FTLC Mem., Ex. 1; Bankruptcy Court Order Approving IRS Settlement, FTLC Mem., Ex. 1, and has been tasked with winding down FTI's affairs. See FTLC Probation Mot. at 1; Bankruptcy Court Order Approving FTI's Amended Chapter 11 Plan at 11-18, FTLC Probation Mot., Ex. 1. In addition, FT Liquidating acted as FTI's successor in another matter in this case, without any objection from the government. See Show Cause Response. Under these circumstances, the Court finds that FT Liquidating is the appropriate successor to FTI.

### B. *The Government is Entitled to $1,000,000 of the Principal*

FT Liquidating asserts that because the principal has remained unclaimed in the Court Registry for over five years, the government may obtain an order directing payment to it

4

only if the government offers "full proof of the right" to the principal under 28 U.S.C. § 2042.[2] Courts interpreting Section 2042 have held that the burden of proof under the statute is a preponderance of the evidence standard. See United States v. Beach, 113 F.3d 188, 191 (11th Cir. 1997); United States v. Kim, 870 F.2d 81, 84 (2d Cir. 1989). The government does not challenge FT Liquidating's assertion that 28 U.S.C. § 2042 applies to this matter, and the Court assumes that it does.

After carefully reviewing the record, the Court is convinced that the government has met its burden and has shown, well beyond a preponderance of the evidence, that it is entitled to $1,000,000 of the principal. As the government points out, the Court stated at the time of sentencing that $1,000,000 of the $1,000,200 deposited by FTI in the Court Registry in December 1998 was to be used to pay the fine. Feb. 23, 1999 Tr. at 15; see also Dec. 21, 1998 Order (specifying that $1,000,000 was to be deposited "as security for any fine and costs ordered by the Court at sentencing"). In its Amended Judgment, the Court stated, in reference to the funds deposited in the Registry: "A fine of $1 million has been assessed and already paid." Am. Judgment at 4. Although FT Liquidating suggests that FTI might have paid the fine through some other mechanism, and that the Court might have been alluding to something other than the money in the Court Registry, this theory is illogical and has no support in the record.

---

[2] 28 U.S.C. § 2042 provides:

No money deposited under section 2041 of this title shall be withdrawn except by order of court.

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

The funds remained in the Registry due to a clerical error in the Amended Judgment, which omitted instructions to the Clerk to transfer the $1,000,000 to the government or, more specifically, to the Crime Victims Fund.[3] Because this is merely a clerical error, the Court has authority under Rule 36 of the Federal Rules of Criminal Procedure or, in the alternative, under Rule 60 of the Federal Rules of Civil Procedure, to correct the Amended Judgment. FED. R. CRIM. P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."); FED. R. CIV. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."). The Court therefore will issue an Amended Judgment and Order directing the Clerk to disburse $1,000,000 of the principal amount to the government, and specifically, to the Crime Victims Fund. See 42 U.S.C. § 10601(a).

### C. FT Liquidating is Entitled to Prejudgment Interest

As explained *supra* at 2, the Court ordered defendant FTI to deposit the anticipated fine and assessment into the Court Registry on December 21, 1998, two months *prior* to the date of judgment, as security for fines and costs to be imposed at sentencing. Until February 23, 1999 – when the Court sentenced FTI and imposed a $1,000,000 fine and a $500 special assessment – FTI remained the rightful owner of these deposited funds. Under the rule that "the interest follows the principal," Pigford v. Vilsack, 2013 WL 1629204, at *1 (D.D.C. Apr. 16, 2013), FTI also was the rightful owner of any interest accrued before February 23,

---

[3] Typically, such order is not required, as most criminal fines will automatically be transferred from the Court Registry to the Crime Victims Fund. See United States v. Sun Growers of California, 212 F.3d 603, 605-06 (D.C. Cir. 2000). In this case, however, the funds remained in the Registry pursuant to the Court's instructions to the Clerk to "hold said funds until their disposition is further ordered by the Court." See Dec. 21, 1998 Order.

1999.  The Court did not order the payment of prejudgment interest at the sentencing, as would be required to transfer entitlement to this interest from FTI to the government.  See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 850 F. Supp.2d 277, 287 (D.D.C. 2012) (noting that prejudgment interest must be ordered as part of the judgment itself).  The Court therefore will order the Clerk to disburse $5,792.09, representing the prejudgment interest accrued between December 21, 1998 and February 23, 1999, to FT Liquidating, as successor to FTI.

*D.  The Government is Entitled to Postjudgment Interest*

A party entitled to a principal amount following a monetary judgment is entitled to collect any interest the principal accrues after the judgment is issued.  See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria, 850 F. Supp.2d at 287 (noting that a party who receives a monetary judgment in a civil case is entitled to interest until the judgment is paid); United States v. Sleight, 808 F.2d 1012, 1020 (3d Cir. 1987) (observing that a criminal fine "does not differ in essence from a judgment arising out of civil proceedings," and "is considered to be a debt to the sovereign"); 18 U.S.C. § 3612(f) (requiring postjudgment interest on criminal fines).  This accords with the general rule, cited above, that interest follows the principal.  See Pigford v. Vilsack, 2013 WL 1629204, at *2; see also Phillips v. Washington Legal Found., 524 U.S. 156, 169 (1998); Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 162 (1980).  Because the government – and specifically, the Crime Victims Fund – became entitled to $1,000,000 of the principal on February 23, 1999, the Fund is entitled also to the interest accrued since that date.[4]

---

[4]  The Court notes that a small amount of postjudgment interest has accrued on the $200 deposited for the special assessment.  As this sum is *de minimis*, the Court will not direct the Clerk to isolate this interest from the postjudgment interest earned on the $1,000,000 fine.

FT Liquidating contends, however, that the interest accumulated in the Court Registry represents an undeserved windfall to the government. FT Liquidating argues that the government should not reap the benefit of this windfall, as it was the government that should have discerned that the fine remained in the Registry. This argument has no merit.

First, the Court rejects the notion that the interest accrued on the principal would be a windfall to the government. $1,000,000 in 1999 – the year when the fine was imposed – is roughly equivalent to (*i.e.*, has the same purchasing power as) $1,427,971.19 today. See CPI Inflation Calculator, Bureau of Labor Statistics, http://www.bls.gov/data/inflation_calculator.htm. If the Crime Victims Fund receives the principal and postjudgment interest, which total approximately $1,332,500, the Fund will be in a slightly *worse* position than if the principal had been timely disbursed. Although FTI points out that the Crime Victims Fund is not an interest bearing account, see United States v. Sun Growers of California, 212 F.3d at 604, this fact is irrelevant. Presumably, the fine would not have remained in the Fund, but rather would have been put to some use years ago. Moreover, the rule that interest follows the principal applies even where the owner of the principal would have been unable to capture that interest itself. See Phillips v. Washington Legal Found., 524 U.S. at 169-170.

Second, the Court is not persuaded that the government acted negligently in this case. FT Liquidating draws the Court's attention to 18 U.S.C. § 3612, which provides that when a court enters a judgment or order imposing a criminal fine, the clerk of that court must transmit a certified copy of the judgment or order to the Attorney General, 18 U.S.C. § 3612(b)(2), and notify the Attorney General once payment is made. Id. § 3612(a). Assuming that the procedures outlined in 18 U.S.C. § 3612 were followed, the Clerk of this Court would have sent to the Attorney General a judgment that stated: "A fine of $1 million has been assessed and already

paid." Am. Judgment at 4.  A Department of Justice official receiving such information would not be on notice that a fine remained outstanding.  The government is no more at fault, in failing to recognize that the funds remained in the Court Registry, than is the plaintiff or the Court.

*E.  The Special Assessment*

As noted *supra* at 2, the Court also ordered FTI to pay a special assessment of $500.  Feb. 23, 1999 Tr. at 15.  Noting that FTI had already deposited $200 in the Registry as security for a special assessment, the Court directed FTI to pay the remaining $300.  Id.[5]  There is no question that the $200 of the principal was intended to cover the special assessment in part, and the Court will direct the Clerk to apply these funds to that assessment now.

For the reasons discussed above, it is hereby

ORDERED that [Dkt. No. 13] the Court's Amended Judgment of April 9, 1999 is amended, as reflected in a new Amended Judgment filed within five days of this Order, to reflect the following further orders of the Court; it is

FURTHER ORDERED that the new Amended Judgment filed in this matter shall in all respects retain the entries of the Amended Judgment of April 9, 1999, except that on page 4 of the new Amended Judgment, the criminal monetary penalties section shall now reflect a total fine payment of $1,000,000.00, in addition to the $500.00 special assessment already noted; it is

FURTHER ORDERED that on page 5, in the Schedule of Payments section, on line "A," the new Amended Judgment should read: "Lump sum payment of $300.00 due

---

[5]  As the government points out, there is no evidence that FTI ever paid the $300 balance.  See Gov't Mem. 4 n.2.  FT Liquidating does not dispute this fact, and both parties propose that the Amended Judgment reflect this outstanding balance.  See Joint Proposed Order at 2, Joint Notice, Ex. 1.  The Court agrees and will specify in the Amended Judgment that the lump sum payment of $300 is due immediately.

immediately, balance due." On line "F," which includes special instructions regarding the payment of criminal monetary penalties, the new Amended Judgment should read:

> The Monetary Penalties are imposed as follows:
>
> Count I         Special Assessment: $100.00 Fine: $500,000.00
>
> Count II        Special Assessment: $400.00 Fine: $500,000.00
>
> FUTURE TECH INTERNATIONAL, INC. has paid $1,000,200 into the Court Registry, $1 million of which should be disbursed, per the Court's Order, to the Crime Victims Fund to pay the fine, and $200 for the special assessment.

It is

FURTHER ORDERED that the Clerk of the Court, within five days of the entry of this Order, shall file this new Amended Judgment in this case and, within ten days of the entry of this Order, execute the new Amended Judgment by disbursing $1,000,000.00 from the Court Registry escrow account in this case to the Crime Victims Fund to pay the ordered fine; it is

FURTHER ORDERED that the Clerk of the Court shall, within ten days of the entry of this Order, execute the new Amended Judgment by disbursing $200.00 from the Court Registry escrow account in this case toward payment of the $500.00 special assessment; it is

FURTHER ORDERED that the Clerk of the Court shall, within ten days of the entry of this Order, disburse $5,792.09, representing the interest earned on the December 1998 payment of $1,000,200.00 through and to February 23, 1999, to Weissman & Dervishi, P.A. Trust Account on behalf of F.T. Liquidating Corp., c/o Brian S. Dervishi, Esq., Weissman & Dervishi, P.A., SunTrust International Center, One Southeast Third Avenue, Suite 1700, Miami, Florida 33131; it is

FURTHER ORDERED that the Clerk of the Court shall, within ten days of the entry of this Order, disburse all interest earned after February 23, 1999 on the December 1998 payment of $1,000,200.00 into the Court Registry escrow account in this case, which interest now totals in excess of $332,000.00, to the Crime Victims Fund; and it is

FURTHER ORDERED that with the disbursements of the funds from the Clerk pursuant to the above, all the parties' obligations under the Amended Judgment, as further amended, will be satisfied.

SO ORDERED.

DATE: July 18, 2014

/s/_____
PAUL L. FRIEDMAN
United States District Judge